Alcalda *v.* Morales.

## LUCINDA ALCALDA, APPELLANT, *v.* HERMAN MO-RALES, RESPONDENT.

Where a bond is drawn up in California, and there signed and sealed by one obligor, and then sent to this State to be signed and sealed by the remaining obligor, the finishing act in the execution of the bond having been done in this State, it must be held in regard to the Statute of Limitations as a bond executed in this State, and not in another State.

The terms and form of a bond having been previously assented to, and the consideration paid by the obligee, it must be considered as having been delivered as soon as placed in any public conveyance, or in the hands of any person to be delivered to the obligee.

Where the vendee of goods, in consideration of the sale, undertakes to pay certain debts to the creditors of the vendor, this is not undertaking to answer for the debt or default of another, but only to pay his own debt in a particular manner.

APPEAL from the First Judicial District Court, Storey County, Hon. RICHARD RISING, presiding.

*Pitzer & Keyser*, for Appellant.

It was error to compel plaintiff to introduce note of Ramirez & Arrieta. This was a new debt to plaintiff, and on a new consideration. The old note could cut no figure in the case.

Admitting the note from Ramirez & Arrieta was barred by the Statute of Limitations, that was no bar to the separate and distinct undertaking of defendant to pay this debt to plaintiff. (*Whiting* v. *Clark*, 17 Cal. 407; *Lord* v. *Morris*, 18 Cal. 490.) Ramirez & Arrieta did not choose to avail themselves of the Statute of Limitations, but placed goods in the hands of defendant to pay the debt of plaintiff.

Defendant having received the consideration to pay this debt, cannot set up the statute, which has only run in favor of the original obligees.

The advertisement of dissolution, etc., which was signed by defendant, was a writing sufficient to take this case out of the operation of the Statute of Limitations, when taken in connection with the oral proof offered by the appellant, and the Court erred in rejecting that proof.

The final act in the execution of this note having been performed in this State, it must be treated as a domestic note, and it was not barred by the Statute of Limitations. (*Read* v. *Edwards*, 2 Nev. 262.)

*Aldrich & DeLong*, for Respondent.

The note from Ramirez & Arrieta was the foundation of this whole claim, and was therefore properly required to be introduced.

The proof only shows that defendant undertook to pay the debts of Ramirez & Co.: it is not sufficient to show a special undertaking to pay this particular debt. Being only a general undertaking to

pay the debts of the late firm of Ramirez & Co., defendant could avail himself of every defense of which that firm could have availed itself.

The question as to whether this note shall be treated as a domestic note, or one made out of the State, depends on when the note was delivered. The note being dated and made payable in California is, *prima facie*, a California note. There is no proof to overcome this *prima facie* evidence of its being a California note. It is proved that one of the makers signed it in California, but there is no proof as to where or how it was delivered, consequently the note must be treated as its face would indicate it to be, a California note.

There was no privity of contract between plaintiff and defendant, and therefore this action cannot be maintained.

This is an attempt to make defendant answerable for the debt of another, without any written evidence of a promise to pay, and is therefore within the Statute of Frauds, and the promise is void.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

The facts presented in this case are as follows : In the month of December, 1864, José Ramirez and Jesus Arrieta were doing business as partners in Virginia City, Nevada Territory, under the style of Ramirez & Co. Ramirez went to Sacramento, California, to borrow money for their business. He negotiated a loan with the plaintiff. The following instrument was drawn up in Sacramento :

" SACRAMENTO CITY, Dec. 13, 1864.

$500. Eight months after date, for value received, we jointly and severally promise to pay to Lucinda Alcalda or order the sum of five hundred ($500) dollars in gold coin of the United States of America, at her dwelling house in the city of Sacramento, California, with interest thereon in gold coin aforesaid at the rate of two per cent. per month from date until paid. The interest to be paid monthly in advance.

$\left\{ \begin{matrix} \text{10 cent} \\ \text{U. S. Stamp.} \end{matrix} \right\}$      JOSE RAMIREZ, [L.S.]
JESUS ARRIETA. [L.S.]"

Ramirez signed it in Sacramento and obtained the money. The

instrument was then sent to Virginia City, executed by Arrieta and returned to plaintiff.

In October, 1865, the present defendant bought out the interest of Arrieta, which was one-half, in the firm, of Ramirez & Co., and as part consideration of that purchase assumed to pay half the debts of the old firm, among which was this obligation to plaintiff. The business was continued in the name of Ramirez & Co. In October, 1866, defendant bought out Ramirez, and as part of the consideration assumed to pay all the debts of Ramirez & Co., among which was this obligation to plaintiff. Soon after the defendant became sole successor to the business of Ramirez & Co., plaintiff demanded payment of her obligation, and upon refusal on his part to pay, she brought this suit.

The foregoing facts being proved on the trial of the case, defendant moved to strike out the testimony in regard to his having assumed to pay all the debts of Ramirez & Co., because it was seeking to make him responsible for the debt of another, when the evidence of such promise was not contained in any writing. This the Court refused to do. Then upon the close of the testimony the defendant moved for a nonsuit on the ground that the debt from Ramirez & Arrieta was barred by the Statute of Limitations, which motion was sustained. The plaintiff moved for a new trial on a proper statement of the case, and now appeals to this Court from the order of the Court below overruling that motion.

Respondent in this Court attempts to sustain the action of the Court below, on three principal grounds. His first proposition is that he did not assume to pay this particular debt, but all the debts of Ramirez & Co., and that a fair construction of such a contract is nothing more than an undertaking to pay all the debts for which Ramirez & Co. were legally bound, which would not include debts barred by the Statute of Limitations ; that this debt was so barred.

Whether the defendant was, under the contract proved, bound to pay a debt of Ramirez & Co. for which they themselves were not legally holden, owing to the running of the Statute of Limitations, it is perhaps not worth while to inquire. This debt, it appears to us, was not barred by the statute. The obligation given for the money is under seal. One of the parties executed the instrument

by attaching his name and seal in the State of California; the other attached his name and seal in Nevada. It could not be held to be an executed instrument until the last seal was attached. That was the completion of the instrument. In contemplation of law an instrument cannot be said to be made or executed until completed. After the complete execution of an instrument it is still not binding until delivered. Our Statute of Limitations applying to instruments made out of the State, says: " Obtained, executed or made out of this Territory."

Now, the question is, could this obligation be said to have been *obtained, executed* or *made* out of the State of Nevada? It certainly was not *executed* out of the State, for the final act which consummated the bond was done in Virginia. But even after executed, it perhaps is not properly *made* until it is delivered. It certainly has not the binding effect of a bond or deed until delivered. But it seems to us the delivery of this bond must be held to have been made in Nevada. It was written in California, and signed by one of the obligors there. The money was loaned or advanced before the bond was finally executed. The execution was consummated in Virginia by the second obligor signing and sealing it there. After being signed and sealed by the second obligor it was sent to the obligee in Sacramento. It would seem that the moment the obligors gave it out of their hands (which was at Virginia) this made it a delivery. Usually, a bond must be accepted by the obligee before the delivery is completed; but where the obligee has paid the consideration for a bond already drawn up, which is to be executed and sent to him, we think there is a clear agreement to accept that bond when executed, and the delivery and acceptance both date from the moment that the bond is delivered by the obligor to some person or public conveyance to be taken to the obligee. If this bond was sent by mail or express, we think the delivery should be held to have been made when it was deposited in the office for transmission. If sent by an individual, the bearer must be treated as the agent of the obligee to accept the bond. In this view of the case, the delivery took place, according to the testimony, in the City of Virginia, in this State. The bond, then, was not at the trial of this case barred by the Statute of Limitations.

The respondent, in undertaking to pay all the debts of Ramirez & Co. in consideration of the purchase he was making, did not promise to answer for the " debt, default or miscarriage of another," but only agreed to pay *his own debt* in a particular manner.   He owed a certain amount to Ramirez, and instead of paying that amount to the party from whom he purchased, he agreed to pay the same amount to a third party, to whom the vendor was indebted.

" The special promise to answer for the debt, default or miscarriage of another," spoken of in the statute, is a promise in the nature of a guarantee, and has no application to a case of this kind.   The contracts of respondent, by which he first undertook to pay one-half of the debt due to plaintiff, and then to pay the other half, were contracts with which plaintiff had nothing to do.   It is, therefore, reasonably objected that plaintiff, having had no connection with these contracts, cannot now maintain any action thereon for want of privity.   Perhaps if we were to follow the strict principles and analogies of the common law, we would be forced to come to this conclusion.

In the English Courts there have been many conflicting decisions on this point.   Some of the older cases hold that if A received something of value from B, in consideration of which he promised to pay a certain sum to C, C might maintain an action on such promise, although he had no agency in bringing about the promise. The modern English decisions, however, all hold a contrary doctrine.   They all hold that a party cannot maintain an action on a contract made between third parties for his benefit, where he was not privy to the contract—that is, where he was not consulted, and did not become by his own assent a party to the contract when it was made.   (See Chitty on Contracts, page 54 *et seq.*, and the English authorities cited in his notes.)

In the United States, a contrary doctrine seems to be firmly established in many of the States.   There seems to be a decided inclination in this country to allow the party for whose benefit a contract is made to sue on it, although he may not have been a party assenting when the contract was made.   This rule seems to be the most convenient one, as it frequently saves a multiplicity of actions.   As it is sustained by ample authority, and we can see no

possible evil to result from it, we are disposed to follow the American cases. (See 1 Parsons on Contracts, and authorities cited in note *t*, p. 390.)

The judgment of the Court below must be reversed, and a new trial ordered.