[No. 1829]

E. J. BURNS, ET AL., APPELLANTS, *v.* J. P. LOFTUS, ET AL.,
RESPONDENTS.

1. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT.
    The findings, being supported by any substantial evidence, cannot
    be disturbed on appeal.

2. MINES AND MINERALS—SUBLEASES—RIGHT TO RENT—ESTOPPEL.
    Plaintiffs, holding a lease from G. of mining land, which had five
    months more to run, without any right to an extension, gave defend-
    ants a sublease of half the land, for the balance of the term, less a
    day, for an expressed consideration of $1,000 and a covenant to pay
    plaintiffs a royalty on ores extracted. But in fact a condition on
    which defendants took the sublease was that they should have more
    time, and at the time of the execution of the sublease G. executed to
    defendants a lease of the land covered by the sublease, by its terms
    commencing then, and expiring two months after the lease to plain-
    tiffs, and reciting that it was subject to said lease to plaintiffs; said
    lease from G. to defendants being obtained with the knowledge and
    assistance of plaintiffs, and as an inducement and consideration for
    the taking of the sublease by defendants. Plaintiffs afterwards
    obtained an extension of their lease for two months. *Held*, that the
    extension of plaintiffs' lease should be considered as affecting only the
    part of the land leased them which was not covered by the lease to
    defendants, and that plaintiffs were estopped and precluded from
    claiming royalty on ore extracted by defendants after the expiration
    of the original lease to plaintiffs.

3. EVIDENCE—PAROL EVIDENCE—VARYING CONTRACT.
    The statement of a witness that he considered the sublease and the
    transaction in relation to it between the parties as a sale of plaintiffs'
    interest in their lease to defendants was inadmissible, as the sublease
    could not be varied by parol, in the absence of an allegation of fraud
    or mistake.

4. EVIDENCE—CONCLUSIONS OF WITNESSES.
    Where witnesses are not testifying as experts, they cannot give
    their conclusion that a sublease and transaction in relation to it
    between the parties amounted to a sale of plaintiffs' interest in their
    lease, but their testimony should be limited to what was said and
    done.

5. PAROL EVIDENCE—CONSIDERATION OF CONTRACT.
    Testimony that a condition of defendants taking a sublease of
    plaintiffs, not expressed in the sublease, was an exaction by defend-
    ants that they be given further time after the expiration of the lease
    to plaintiffs was admissible to show a further consideration, which
    may be shown by parol in addition to, or contradiction of, the con-
    sideration stated in the instrument.

APPEAL from the District Court of the Seventh Judicial
District of the State of Nevada, Esmeralda County; *Theron
Stevens*, Judge.

Action by E. J. Burns and others against J. P. Loftus and others. From a judgment for defendants, plaintiffs appeal. **Affirmed.**

STATEMENT OF FACTS

On May 22, 1906, the Goldfield Combination Fraction Mining Company leased to plaintiff Burns 150 feet across the northerly end of the Combination Fraction mine. By the terms of this lease it was to expire at noon, January 1, 1907, and it specified that the possession of the premises was to be surrendered to the lessor at that time. It contained no provision for renewal or extension. On July 28, 1906, for an expressed consideration of $1,000 paid, and a covenant for the payment of 10 per cent of the net smelter returns on ores mined, the easterly one-half of this piece of mining ground was subleased by Burns and others for the term ending at noon, December 31, 1906. At the time and date of the execution of this sublease the Combination Fraction Mining Company executed to the defendants a lease for the same ground covered by the sublease, by its terms purporting to commence on that day, and expiring at noon, February 28, 1907, and reciting that it was subject to the original lease from this company to Burns, dated May 22, 1906, and providing that no forfeiture of this lease to the defendants should operate by reason of any forfeiture of the prior one to Burns.

In relation to the lease to the defendants the distinguished district judge, in addition to other findings, made the following:

"The court finds from the evidence that the Goldfield Combination Fraction Mining Company was under no obligations to renew or extend the Burns lease, and that an extension or renewal thereof had been repeatedly denied to the plaintiffs prior to the time of the execution of the Burns-Loftus sublease; that the Burns-Loftus sublease was taken by the defendants, and the $1,000 paid upon the condition that the defendants could secure additional time from the Goldfield Combination Fraction Mining Company, and that there is nothing to show that an extension of the original Burns lease was contemplated or considered at that time; also, that the plaintiff Burns on several occasions went to A. D. Meyers,

president of the Goldfield Combination Fraction Mining Company, and urged that additional time be given to the defendants on the easterly portion of the ground which was being operated by them, and seemed quite anxious that an arrangement of that kind should be consummated. The court finds that the evidence strongly preponderates in favor of the proposition that it was the intention of all the parties to the transaction that, after the expiration of the Burns lease, to· wit, on January 1, 1907, and the additional time allowed on account of the strike, the defendants should have their lease to their portion of the ground entirely free and clear of any interest of the plaintiffs therein, and that it was upon that understanding that the defendants agreed to take the sublease and pay the bonus of $1,000 and a royalty of 10 per cent upon all ores extracted by them during the term of the sublease." "It is not contended by the plaintiffs that any unfair means were used by the defendants to secure any rights which could properly be claimed by the plaintiffs, but that all the negotiations were openly and fairly conducted, and that all parties were advised as to what was being done."

"The evidence of all the defendants, as well as that of the president and secretary of the Goldfield Combination Fraction Mining Company, seems to strongly indicate that such was the understanding and agreement of all the parties, and the evidence of Burns must stand alone against the five others who were connected with the transaction." The Combination Fraction Mining Company on September 26, 1906, granted an extension of the lease to the defendants of sixty days from September 28, 1907, and on September 29, 1906, the company executed an extension of sixty days from January 1, 1907, of the original lease to Burns, including an additional area. Owing to labor troubles, there were other extensions for the operation of both leases, but these do not affect the legal propositions involved.

*Thompson, Morehouse & Thompson,* for Appellants:

I.   The rule is: "If the parties to a contract have reduced it to writing, they must intend such writing to be the repository of their common intention. It merges all prior and

contemporaneous negotiations. Accordingly a contract in writing, complete on its face, cannot be contradicted by extrinsic evidence, nor can prior or contemporaneous parol agreements be used to contradict the written contract so as to substitute for the intention therein expressed that expressed in such oral agreements. To violate this rule and to admit extrinsic evidence of the intention of the parties direct for the purpose of displacing their intention, as shown in the written contract, is to substitute the inferior for the superior degree evidence—conjecture for fact—presumption for the highest degree of legal authority—loose recollection and uncertainty of memory for the most sure and faithful memorials which human ingenuity can devise or the law adopt." (Page on Contracts, vol. 2, p. 1820, sec. 1189.)

II.   Before a tenant who has entered into possession under a lease can deny his landlord's title he must surrender possession.   This rule is universal.   We need only cite the note to *Davis* v. *Williams*, 89 Am. St. Rep. 93, 96, for here Mr. Freeman has gathered all the authorities.   And the estoppel continues where he holds over upon the expiration of his lease.  (89 Am. St. Rep. note 2, p. 97.)   Now, such being the law, as the proof is positive and undenied that the tenants (defendants) entered into and upon the lands in the sublease made to them by plaintiffs and took possession under that sublease, worked the property and extracted ores and paid royalties, they cannot deny that they are the tenants of the plaintiffs. When their sublease ended they still remained in possession, still carried on their mining operations, and as Mr. Freeman says in *Davis* v. *Williams*, 89 Am. St. Rep. note 2, p. 97: "A tenant who holds over after the termination of his lease is as much estopped to deny his landlord's title as any other tenant. The estoppel continues, notwithstanding the term has expired." The reason is that the tenant must first surrender possession of the premises to his landlord before he is relieved from the estoppel created by his tenancy.  (*Kiernan* v. *Terry*, 38 Pac. 671; *McKissick* v. *Ashby*, 33 Pac. 729.)

III.   The reason of the exception to the general rule is that when the landlord's title has ceased the relation of landlord and tenant has ceased, and therefore the person who entered

as tenant is no longer a tenant. But so long as the relation of landlord and tenant exists the tenant cannot dispute his tenancy. The landlord may not be the owner of the land, but have the control and possession; in such case the tenant is estopped. What the exception to the rule means is that when the landlord has by some means lost his right as landlord, either by loss of title, or right to possession, so that by such loss of title or right to possession he ceases to occupy the position and relation of landlord, then the defendant may dispute the relation of landlord and tenant. But no such fact exists in this case. At no time did Burns and his associates lose their title and right to possession. The original lease was extended, first by the agreement as to strikes, fully pleaded in the answer of defendants, and then sixty days in writing by their lessor, and during all this time the plaintiffs owned the estate absolutely and the defendants were in possession only under the sublease and not otherwise. The defendants are therefore not in a position to dispute their tenancy and their holding over makes them liable to the plaintiffs.

IV. Again, while a lease may not contain any provision as to extension or renewal, yet every tenant has an expectancy thereof, which is a valuable right and constitutes property, or, as is said in 18 Am. & Eng. Ency. Law, 2d ed. 685: "But though the tenant has no absolute right to a renewal which is enforcible against the landlord, his possibility or expectancy of a renewal is regarded as against third persons, as property or assets incident to the existing lease." (*Phyfe* v. *Wardell*, 28 Am. Dec. 430; *Johnston Appeal*, 2 Am. St. 539; *Mitchell* v. *Reed*, 19 Am. Rep. 252; Pom. Eq. Juris. 3d ed. sec. 1050.) And one who has knowledge of a lease has constructive notice of all its covenants. (Pom. Eq. Juris. 3d ed. sec. 628.) And it matters not that the landlord had in the first instance refused to grant the extension. (*Mitchell* v. *Reed*, 61 N. Y. 123; *Foster* v. *Reed*, 78 Iowa, 205; *Sties* v. *Kranz*, 32 Minn. 313.) Therefore, as the rule is that the tenant has this possibility, this expectancy "as against third persons," when the defendants took their sublease they took with full knowledge that while plaintiffs could not enforce against the original lessor an extension, yet they had an expectancy,

which the plaintiffs had a perfect right to perfect at any time. The obtaining, therefore, of the extension by Burns and his associates was only the doing an act they had the right to do, because this expectancy was valuable property.

V. Now, the relation of landlord and tenant is a quasi-fiduciary relation (15 Am. & Eng. Ency. Law, 2d ed. p. 1199), making the above rule applicable, for while the tenant remains in possession he cannot buy in an outstanding title and set the same up against his landlord. He may purchase, then surrender possession, and set up outstanding title, but while he remains in possession the relation of landlord and tenant exists, and he cannot defeat the rights of his landlord by so doing. (*Russell* v. *Titus*, 3 Grant Cus. 295; *Clem* v. *Wilcox*, 15 Ark. 102; *Hughes* v. *Watt*, 28 Ark. 153; *Drane* v. *Gregory*, 3 B. Mon. 619; *Peyton* v. *Stith*, 5 Pet. 485; *Henley* v. *Branch Bank*, 16 Ala. 552; *Sharpe* v. *Kelly*, 5 Denio, 431; *People* v. *Stiner*, 45 Barb. 56; *Arnold* v. *Woodward*, 4 Colo. 249; *Bergees* v. *Rice*, 74 Cal. 590; *Silvey* v. *Sumner*, 61 Mo. 253.) These cases hold that a tenant, while he remains in possession, cannot buy an outstanding title or interest in the leased premises, and set it up against his landlord. Why? Because the relation is quasi-fiduciary, and such act would be a fraud upon his landlord and violate his relation as tenant. Again, the general rule is, by a great weight of authority, that while the tenant remains in possession he cannot accept a lease and admit title in another or show that his possession is from another thus derived. (*Miller* v. *Bonsadon*, 9 Ala. 317; *Buchanan* v. *Larkin*, 116 Ala. 431; *Hughes* v. *Watt*, 28 Ark. 153; *Richardson* v. *Jarvey*, 37 Ga. 224; *Carter* v. *Marshall*, 72 Dec. 609; *Forgey* v. *Harvey*, 151 Ind. 507; *Bowdish* v. *Dubuque*, 38 Iowa, 341; *Tullis* v. *Tacoma Land Co.*, 19 Wash. 1017; and numerous authorities cited on page 94 of 89 Am. St. Rep.)

VI. In the lease of a mine the expectancy of extension or renewal is one of great moment. The lessee must expend large sums in development. His time is short—in this case only six months. It often happens that the tenant only reaches the ore body at the very close of his lease, or he may only reach a point where he feels sure of finding the ore body. He does not wish to lose the large sums expended in time,

labor, machinery and other expenses, and to save him this loss, and to secure some remuneration, he needs, he expects, an extension. Again, nine times in ten, the owner of the property is only a locator, without any money or other means of developing his property. He looks to the lessee for the development of his mine. He stands ready to grant an extension, because the extension means riches to him and the sure establishment of the true value of his property. We call the court's attention to the long and exhaustive note to *McConst* v. *Singers-Bigger*, 145 Fed. 103, in 7 Am. & Eng. Annotated Cases, at page 295, where all the authorities, English and American, are collected. It will be seen that as to third persons this expectation is a valuable property right, and when defendants took possession as tenants they are bound to consider and preserve that right, and when they obtained a separate lease to themselves they contract subject to the rights of the plaintiffs. It is their duty, therefore, to do no act which will destroy that right. That relation was a fiduciary one. (*Robins* v. *Hape*, 57 Cal. 497.)

· VII.   Striking out the oral testimony as to the understanding at the time of the contract, the whole question at issue is one of law, and being one of law, the oral understanding being eliminated, there is no conflict of testimony requiring a new trial, and we respectfully submit the judgment should be reversed, with instructions to enter judgment for plaintiffs for the sum of ten thousand dollars, interest and costs.

*R. G. Withers*, for Respondents:

I.   If, instead of bringing this suit, plaintiffs had taken the position that the Burns lease expired on January 1, 1907, plus the extension to January 27, 1907, during the strike agreement, and had claimed that we, while subtenants, had obtained a new lease, which was in fact a renewal of the Burns lease, and that we stood in a fiduciary relationship to them, then we would have a proper case in which the doctrine of the tenant's right of renewal might be applicable, but this doctrine can have no possible bearing upon the case at bar.

II.   Plaintiffs contend that the extension granted to them shall, by virtue of this doctrine, attach to the Burns lease and

thereby cut out the independent lease to Loftus which had
been executed as a part of the consideration for the taking by
us of the sublease and the payment of the $1,000 and of the
10 per cent royalty and of the expenditure by us for mining
operations. The two propositions are wholly dissimilar. It
is like trying to graft an apple tree on a tomato vine. More-
over, the Loftus lease was not executed during the term of
our sublease, but, as we have seen, the execution of the Loftus
lease and of the sublease was a part of one and the same
transaction.

III. Appellants make the remarkable claim that it is the
law that if a landlord grants a lease to A and afterwards grants
a lease to B, and still later executes an extension of A's lease,
that such extension will cut out B's lease. If this were the
law, it would be unsafe, it would be impossible, to enter into
a lease for a term to begin in future, and the merchant of
foresight and prudence, who enters into a lease for a store-
room for the coming year, would have absolutely no protec-
tion and might find that his lease is null and void, and,
perhaps, even a fraud; because, forsooth, after its execution
and before the commencement of its term, the landlord has
given an extension to a tenant then in possession, or, indeed,
has actually put some one else in possession in order that he
might give an extension, and thereby violate his contract.
Such a doctrine would be monstrous. It would be impossible
for any one to have any protection from a written lease, unless
he entered into possession the very minute the lease was
executed.

IV. A tenant cannot deny his landlord's title. The estop-
pel applies to the title at the time the tenancy arose. (18
Am. & Eng. Ency. Law, 422; 24 Cyc. 950; *Towne* v. *Butter-
field*, 97 Mass. 105; *Wolf* v. *Johnson*, 30 Miss. 513; *McAusland*
v. *Pendt*, 1 Neb. 211.) The same estoppel which applies to
the sublessor's title applies equally to the title of the original
landlord. (24 Cyc. 936-7, L. R. A. 930-1.) Under this rule
we could not deny that at the time that our subtenancy arose
Burns had a title as lessee, expiring at noon on January 1,
1907. We were equally bound to admit that the Combination
Fraction Mining Company held the title in fee, subject to the

Burns lease up to January 1, 1907, and not subject to that lease after that date, and that the Combination Fraction Mining Company had at all times a right to lease this ground after January 1, 1907, to whomsoever it might see fit and to us, if it desired to do so. The tenant may show that the landlord's title has expired since the tenancy began. (24 Cyc. 946, 947–8, 949, 951; 18 Am. & Eng. Ency. Law, 354, 422; *Fry* v. *Bowman*, 67 Kan. 531; Jones, Landlord and Tenant, sec. 703; 2 Taylor, L. & T. 629, 708; *Lamson* v. *Clark*, 113 Mass. 348; *Shields* v. *Lozear*, 34 N. J. 496; *Pickett* v. *Ferguson*, 45 Ark. 157; 55 Am. Rep. 545.)

V. Appellants urge that we could never assert an independent leasehold title to the eastern half of the ground without first surrendering possession to them, and they allege in their complaint that they assumed that we were holding over until May 15th, when they surrendered possession of the western half of the ground. Generally there is a presumption that when a tenant is found in possession after the expiration of his term that he is holding over. This is, of course, upon the assumption that no change has occurred in the title of the lessor, and it is always rebuttable. (24 Cyc. 1014–15, 1019; *Puckett* v. *Scott*, 18 Tex. Civ. App. 269; 100 S. W. 969.) To begin with, this places appellants in a peculiar position. We held possession of the east half of the ground until July 15, 1907. If our original lease, as a matter of law, could never go into effect until we had first surrendered possession to Burns, would it not follow that we were still sublessees, after the expiration of the Burns lease on May 15th, and until we finally quit on July 15th?

VI. Appellants say that there was error in the trial below, because oral evidence was admitted to alter and contradict the written terms of the sublease. We deny that any attempt was made or any evidence was introduced, which in any manner contradicted or altered the terms of the sublease. Counsel seems, however, to confuse the terms of the sublease itself with other collateral and independent agreements, with the consideration upon which the sublease was executed and delivered and with agreements which were subsequent thereto. The testimony which is objected to is proper because it is testimony not

intended to alter the terms of the sublease, but to show the
consideration upon which it was entered into and the real con-
sideration may always be shown, even though it does vary the
terms of the original instrument. (17 Cyc. 648, par. 9;
*Lake* v. *Bender*, 18 Nev. 385.) This testimony was also admis-
sible for another reason: It proved other agreements which
were wholly collateral and independent. (17 Cyc. 713, 717,
720; *Durkin* v. *Cobleigh*, 17 L. R. A. 270, and note on page
274; note in 2 Am. & Eng. Ann. Cases, 146; *Windsor* v. *Railway*,
37 Wash. 156; 3 Am. & Eng. Ann. Cases, 62.; *Travis* v. *Epstein*,
1 Nev. 116.) It was admissible for still another reason: The
Burns lease prohibits any subletting without the written con-
sent of the lessor. The Burns-Loftus lease provides that "this
agreement and sublease shall be of no force or effect until con-
sented to in writing by the Goldfield Combination Fraction
Mining Company."

VII.   Finally, we respectfully submit that if there was any
error in the court below, it was an error without prejudice to
the appellants. There was no fraud or concealment of any
nature or kind on the part of the respondents. Everything
done by them was done in an open, fair and businesslike way.
They scrupulously paid in full every cent that was due to the
plaintiffs upon every pound of ore that was extracted up to
February 1, 1907. They paid their money to Burns for the
sublease and they agreed to pay him the 10 per cent royalty,
which they afterwards paid; and this was on the condition
and in consideration of the fact that they were able to obtain,
in the form of an independent lease, additional time which
Mr. Burns had tried to get and in which he had wholly failed.
We submit that the judgment of the district court was right
and that any other judgment would have been unjust and
unfair, and we further submit that after Burns had entered
into the agreements which he did actually make, and after he
had reaped the benefit of those agreements and had obtained
the money from the defendants, by the expenditure of which
he was enabled to obtain an extension of his lease upon that
part of the ground being worked by him, that it does not
come with good grace for him to bring a suit against the
defendants, claiming further large amounts of money and

basing his rights upon technical legal definitions. The law looks to the substance and not to the letter, and in determining the rights of the parties in this case we think the court should remember that " *Qui haeret in litera, haeret in cortice.*"

*Thompson, Morehouse & Thompson,* for Appellants, in reply:

I.　The main point of respondents' contention, that a tenant may dispute his landlord's title, when the landlord's title has been extinguished, after the tenancy has been created, it will be noticed that we admitted in our opening brief, but the respondents have not in any way brought themselves within the rule.　The true rule is that stated in *Ashton* v. *Golden Gate Lumber Co.*, 58 Pac. 1, and it will be seen that respondents have not brought themselves within any exception to the rule that a tenant cannot dispute his landlord's title while he remains in possession.　The tenant has not been evicted, he has not obtained the original lessor's title or any title, nor has he been compelled to pay rent to a superior title, nor has any adverse demand been made upon them, nor did the original landlord put them in possession, nor did they hold adversely to their immediate landlord, nor were they in any way disturbed in possession, nor have they shown that the Burns title had terminated—they have only shown they got a lease in form from the original lessor—but did that lease terminate the Burns title?　We have shown clearly and they have not answered it, except to say: "If this were the law it would be unsafe, it would be impossible, to enter into a lease for a term to begin in future," etc.; that they in fact had no lease, but only an interest in a term, because when their lease in form was made the original lessor had already carved out an estate that he could not re-grant until the reversion re-vested in him.　During that time the original landlord had nothing to grant.

By the Court, Talbot J. (after stating the facts):

This action was brought to recover $10,000, claimed to be due as royalty or percentage on a sublease of mining ground. The appeal is from a judgment in favor of defendants, and from an order denying a motion for a new trial.

A number of legal principles, which are correct in the
abstract, have been urged in behalf of the appellants, which
do not fit the conditions shown by the record. Their theory
of the facts of the case, which was not adopted by the district
court, cannot be considered as affecting the result of the appeal.
Under the practice so often stated that the testimony will not
be reviewed when the verdict or findings are supported by any
substantial evidence, we are limited to the facts found by the
lower court. This means that, instead of applying the rule
which usually makes a tenant or subtenant liable when he
holds over after the expiration of the lease under which he
went into possession, we must proceed upon the theory that
Burns, while managing the lease and carrying on negotiations
for himself and associates, was anxious to have defendants take
a sublease upon one-half of the ground, and work it exten-
sively, and that, in order to induce the defendants to take the
sublease, he used his influence with the mining company
to have the defendants allowed time after the expiration of
the Burns lease, as they exacted, before they would take the
sublease, which resulted in the execution of the lease by the
mining company to the defendants for a period extending two
months beyond the time allowed the defendants for working
under the sublease.

Therefore the controlling question is whether under the
facts found—and more particularly that plaintiffs, while hold-
ing a lease upon a piece of mining ground, gave a sublease to
the defendants upon half of it for the time remaining on the
original lease, less the last day, and that in contemplation of
extensive work and placing machinery this sublease was taken
by the defendants only on condition that they should have
further time, which, by lease to them from the original lessor,
was granted for sixty days beyond the period of the original
lease, and that the lessor later extended this lease to the
defendants sixty days, and still later extended the original
lease to the plaintiffs sixty days; that the defendants paid
the plaintiffs the royalties or percentages for the ores extracted
during the sublease and the additional day until the expira-
tion of the original lease—the plaintiffs can recover the per-
centages upon the returns of ore extracted by the defendants

during the sixty days' extension of the original lease to the plaintiffs, or are the defendants entitled to retain this percentage under the lease executed to them covering the period of the extension of plaintiffs' lease? We feel constrained to consider the case on the hypothesis that the lease to the defendants was obtained with the knowledge and assistance of Burns, and as an inducement and consideration for the taking of the sublease by the defendants, and that his associates were charged with knowledge and bound by his action, and consequently that they surrendered any claim which otherwise they might have had to the ground after the expiration of their lease.

Bearing in mind, in connection with the other circumstances, that the sublease was subject to the conditions of the original lease to Burns, and that the lease to the defendants specified that it was subject to the terms of the Burns lease, which fixed and limited the plaintiffs' tenure, as all concerned must have been aware, the rights of the parties to the east one-half of the ground vested in the defendants from the execution of the sublease for the remainder of the period of the Burns lease, less twenty-four hours, during which the plaintiffs would have been entitled to the possession, if demanded; but, as the possession was not demanded, in holding over by acquiescence for this twenty-four hours the defendants became liable for 10 per cent of the ores extracted during that time, under the same terms as provided in the sublease. If plaintiffs had demanded and received possession for the twenty-four hours, the defendants would have been entitled to demand and receive possession at the end of the twenty-fourth hour; but, as there was no surrender of the possession, after the expiration of twenty-four hours defendants became entitled to possession under their own lease, according to the agreement of the different parties at the time the sublease and lease to the defendants were made.

Although the Loftus lease provided it should run from the time of its execution until approximately two months beyond the determination of the Burns lease, being made subject to the latter, it could not take effect, so as to give the defendants any right of possession under it, until the expiration of the

Burns lease on the 1st day of January, 1907, if the latter was not sooner forfeited, and no forfeiture is shown or claimed. As the Loftus or defendants' lease, under the findings, was obtained by the consent, knowledge, and assistance of Burns, and as an inducement for the defendants to take the sublease, and this sublease executed by the parties referred to the Burns lease, which stated that it expired on the 1st day of January, and as the defendants' lease was both made and extended prior to the extension of the Burns lease, the extension of .the Burns lease, obtained when he was aware that the mining company had previously given the lease or extra time to the defendants on the east half of the ground for the period covered by the extension of the Burns lease, only applied to, or affected that part of, the ground not covered by the Loftus lease previously executed, and the plaintiffs are estopped and precluded from claiming any right to the percentage of ores extracted during that part of the period of the Loftus lease which ran after the termination of the original Burns lease.

After the defendants had taken the sublease on condition that they have more time from the Combination Fraction Mining Company, which had been refused to the plaintiffs, and the plaintiffs knew, or were charged with knowledge of the fact, that defendants would not take the sublease, unless they could obtain more time from the company, plaintiffs could not, by later obtaining an extension of their lease, deprive the defendants of the benefits of their lease, which they had obtained as one of the conditions in the transaction by which the plaintiffs received $1,000 and 10 per cent royalties during the life of the Burns lease.

The appellants are correct in their contention and application of the rule that the written terms of the sublease cannot be varied by parol, except in so far as the testimony related to the consideration. The statement of witnesses that they considered the sublease, and the transaction in relation to it between the parties, as a sale of the plaintiffs' interest in the Burns lease was improperly admitted, for the sublease was governed by its terms, which could not be varied by parol in the absence of any allegation that it had been executed

through mistake or fraud, and in any event the testimony
should relate to what was said and done, instead of to the con-
clusions of the witnesses, who were not testifying as experts;
but the admission of this evidence was harmless error. All
the written conditions of the sublease appear to have been
fulfilled, including the payment of the consideration expressed
of $1,000 cash and 10 per cent of the net values extracted.

The testimony that a further consideration or condition was
exacted by the defendants in the requirement that additional
time be given to them after the termination of the Burns
lease was admissible to show a further and full consideration,
which may generally be proven by parol, in addition to, or
contradiction of, the consideration stated in the instrument.
(*Guidery* v. *Green*, 95 Cal. 630, 30 Pac. 786.) This evidence
was properly admitted to show that plaintiffs were aware, or
were warned, at the time they secured the extension of their
lease, that the defendants had already obtained a lease on the
east one-half of the ground for the time covered by the exten-
sion given later of plaintiff's lease, under which extension
they now base this action. This testimony was admissible to
prove an estoppel, for if the defendants had not entered into
any sublease or contract with the plaintiffs, or if the plaintiffs
had held no leasehold or other interest in the premises, or if
they had owned the mine in fee, but had assisted or induced,
or with knowledge allowed without objection, the defendants
to take their lease from the Combination Fraction Mining
Company, and proceed with heavy expenditures and develop-
ment work upon the ground, and the company had been with-
out any right or title to the claim, the plaintiffs would still be
precluded from recovering.

There is stronger reason for holding that plaintiffs cannot
prevail when the benefits they accepted and obtained through
the transaction would not have been acquired, and the defend-
ants would not have taken the sublease, nor paid the $1,000,
nor royalties to the plaintiffs, if they had not been given the
additional time under the lease to them. The ordinary rules
of estoppel, applied to the facts as found by the district court,
are a bar to a recovery by the plaintiffs. (*Alexander* v. *Winters*,

23 Nev. 475, 24 Nev. 146; *Bishop* v. *Stewart*, 13 Nev. 41; *Sharon* v. *Minnock*, 6 Nev. 377; *Corser* v. *Paul*, 41 N. H. 31, 77 Am. Dec. 753; 2 Wigmore on Evidence, 1056; 16 Cyc. 787, and cases cited.)

The judgment is affirmed.